**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

GORDON FLATT,

*Plaintiff*,

v.

JOHN DOE,

*Defendant*.

**COMPLAINT**

Civil Action No.

Plaintiff Gordon Flatt alleges as follows:

**NATURE OF THE ACTION**

1.     This action arises from Mr. Flatt's discovery of three Nest-brand security cameras secretly placed in a Manhattan apartment (the "Apartment") owned by his brother where Mr. Flatt periodically stays.

2.     Without the consent or knowledge of Mr. Flatt, his brother, or any invited guests in the Apartment, the cameras recorded audio and video continuously in the bedroom, kitchen, and living room, capturing moments that Mr. Flatt believed private.

3.     The individual(s) who placed the cameras ("John Doe") was able to surveil Mr. Flatt and his guests remotely using a Nest account, allowing him/her to view live footage and audio of Mr. Flatt and any guests in high-definition clarity, twenty-four hours a day.

4.     Beyond having a 24/7 live feed of audio and video from three different sources in the Apartment, Doe was able to receive alerts from Nest by phone or email when the cameras sensed motion or picked up sudden sounds.  Doe could even receive targeted alerts when a person came into view or spoke because Nest technology can differentiate human speech or the image of a human from other sounds and images.

5.     For up to *30 days*, Doe could store all audio and video footage in the cloud to review at his/her leisure.  Additionally, Doe could share any video clips or download them to retain indefinitely.

6.     To remedy this gross invasion of his privacy, Mr. Flatt now brings this action.

## THE PARTIES

7.     Plaintiff Gordon Flatt is a Canadian citizen who stays on occasion at the Apartment.

8.     Defendant John Doe is an unknown individual(s) who placed and operated the three Nest cameras in the Apartment without the knowledge or consent of Flatt, his brother, or any invited guest to the Apartment.  Mr. Flatt intends to determine Doe's identity as soon as possible in discovery.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because this action arises under federal law, 18 U.S.C. § 2510 *et seq.* (the "Federal Wiretap Act").

10.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Mr. Flatt's claims occurred within this district.

## FACTUAL ALLEGATIONS

**I.     Discovery of the Surveillance Equipment**

11.    Mr. Flatt periodically stays at the Apartment.

12.    On or about October 11, 2018, Mr. Flatt began a stay at the Apartment along with a companion.

13.   On the afternoon of October 19, 2018, Mr. Flatt's companion discovered a Nest camera ("Camera A") surreptitiously placed well above eye level on a high ledge in the kitchen/living room area.

14.   Mr. Flatt's companion was startled by the discovery and immediately informed Mr. Flatt.

15.   Mr. Flatt and his companion then traced the wire connecting Camera A to a power source.  The wire was close to another wire for the Apartment's wireless internet router, making it more difficult to notice.

16.   Camera A was a Nest-brand camera capable of recording audio and producing 1080p high-resolution video.

17.   Alarmed at the discovery of Camera A, Mr. Flatt and his companion began to search the Apartment for additional surveillance equipment.

18.   While searching the living room, Mr. Flatt's companion noticed a black power cord running on the ground along a wall of the Apartment.  After tracing the cord, which was connected to a power source, Mr. Flatt's companion discovered a second camera ("Camera B") under a wood dry bar/storage cabinet.

19.   Mr. Flatt and his companion believe Camera B had at some point fallen from another position to the floor.  However, it remained plugged into the power source.

20.   Camera B was a Nest-brand camera like Camera A.

21.   Later on October 19, Mr. Flatt's companion discovered a third camera ("Camera C") in the bedroom.

22.   Mr. Flatt's companion found Camera C on the floor of the room behind the headboard.  The camera was plugged into a power source.

23.   Camera C was also a Nest-brand camera like Cameras A and B.

24.   Mr. Flatt is not certain when the cameras were placed in the Apartment or who placed them there.

25.   Mr. Flatt alerted his brother, the owner of the Apartment, of his discovery of the Nest cameras.  Mr. Flatt's brother indicated he had no knowledge of the cameras and did not authorize anyone to install them in the Apartment.

**II.      Capabilities of the Nest Cameras**

26.   Nest is a California-based company that sells state-of-the-art "smart-home" technology, including thermostats, home security systems, doorbells, locks, and cameras.

27.   Nest cameras are popular for use as baby monitors, pet cameras, or security cameras.

28.   Nest cameras, including those discovered in the Apartment, can continuously record audio and high-definition video.

29.   Users of a Nest camera create a unique online account that allows them to use the camera remotely through a mobile app or internet browser.

30.   Through their Nest account, users can access live audio and video footage from their cameras from the Nest website or App from anywhere in the world.

31.   Additionally, Nest users can receive automatic updates through their mobile device or email account of motion or sound captured by their cameras.  Nest's website says, "If Nest Cam thinks something's up, it'll send a phone alert or an email with a key image from the event."  *Nest Cam Indoor*, Nest, https://nest.com/cameras/nest-cam-indoor/overview (last visited Jan. 4, 2019).

32.  Nest camera users also can receive special alerts when the camera detects the image or voice of a person, as Nest technology can differentiate the image or voice of a person from other images or sounds.

33.  Nest users are able to retain up to 30 days of recordings on the cloud, allowing them to scroll through the recordings at their leisure through their online account.

34.  Users are also able to share Nest camera recordings and download them to keep indefinitely.

35.  Nest confirmed that Camera A was activated on a one-month subscription.  Nest would neither confirm nor deny whether Cameras B and C were activated with Nest subscriptions.  Nest would not provide account-holder information for Cameras A-C.

36.  Mr. Flatt intends to subpoena Nest to discover the identity of the person(s) associated with the activation, operation, and use of Cameras A-C.

**CLAIM FOR RELIEF**
**Count I**
**(Violation of the Federal Wiretap Act, 18 U.S.C. § 2511(1))**

37.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 36, inclusive, of this Complaint as if fully incorporated herein.

38.    The Nest cameras captured audio of Mr. Flatt's conversations within the Apartment with his companion without either of their consent.

39.    When Mr. Flatt and his companion were conversing within the privacy of the Apartment, they reasonably did not believe anyone else could hear their conversations or that their conversations were subject to interception.

40.    Mr. Flatt and his companion had a reasonable expectation of privacy in the Apartment.

41.    Using the Nest cameras, John Doe intentionally intercepted or endeavored to intercept Mr. Flatt's oral communications.

42.    Using the Nest cameras, John Doe intentionally used or endeavored to use an electronic, mechanical, or other device to intercept or attempt to intercept Mr. Flatt's oral communications.

43.    The Nest cameras transmitted a signal through a wire, cable, or other like connection used in wire communication.

44.    John Doe had reason to know or knew that the Nest cameras or any component thereof had been transported in interstate or foreign commerce.

45.    Mr. Flatt is entitled to bring this civil action under 18 U.S.C. § 2520(a).

46.    Mr. Flatt seeks all appropriate relief including actual or statutory damages under § 2520(c)(2), whichever is greater, and punitive damages.

47.   Mr. Flatt also seeks reasonable attorneys' fees and other litigation costs reasonably incurred under § 2520(b)(3).

## PRAYER FOR RELIEF

WHEREFORE, Mr. Flatt respectfully requests that the Court enter judgment in its favor and against John Doe as follows:

(1)   Enter Judgment in favor of Mr. Flatt and against John Doe on Mr. Flatt's claim that John Doe violated 18 U.S.C. § 2511(1);

(2)   Award compensatory, consequential, and/or statutory damages in an amount to be proven at trial;

(3)   Award punitive damages;

(4)   Award attorneys' fees, costs, and other related expenses;

(5)   Award pre-judgment and post-judgment interest; and

(6)   Award such further relief as this Court deems just and proper.

Dated: January 4, 2019                    Respectfully submitted,

                                          /s/ Justin V. Shur
                                          Justin V. Shur (#3897212)
                                          MOLOLAMKEN LLP
                                          600 New Hampshire Avenue, N.W.
                                          Suite 660
                                          Washington, D.C. 20037
                                          (T) 202.556.2000
                                          (F) 202.556.2001
                                          jshur@mololamken.com

                                          *Attorney for Plaintiff Gordon Flatt*